Good morning, Your Honors. Robert Powell on behalf of Mr. Molina. I would like to reserve about two minutes by way of rebuttal. Mr. Molina has been living in the United States since he was about three months old. He obtained permanent residence status in 1990 in the legalization program. He's lived here his entire life except for about a month when he was deported from the United States. That deportation was based on a legal error made by the immigration judge. The immigration judge denied Mr. Molina an opportunity to apply for a discretionary waiver, a 212C waiver, and he was improperly deprived of his right to judicial review. Now there's a line of cases allowing a motion to reopen where there's been a gross miscarriage of justice like there has been in this case, allowing that prior deportation hearing to be reopened. If that's reopened, that would allow Mr. Molina an opportunity now to apply for 212C relief that he was improperly denied of in 1996. A line of cases allowing reopening when there's been a legal error. That's in the, there are circuit court cases that have recognized that and also the Board of Immigration Appeals in some precedent decisions. And I think most relevant for our purposes here are a couple unpublished decisions which have allowed reopening for a gross miscarriage of justice in a case just like this. The matter of Fernandez, which is an unpublished Board of Immigration Appeals decision cited in our materials in the administrative record at page 264. Now we think there are several legal mistakes that the immigration judge and the Board of Immigration Appeals made that require a reversal of the board's decision. First of all, the board adopted an incorrect standard for a gross miscarriage of justice. Basically the board said that it will only recognize a miscarriage of justice where there's been a determined... May I stop you, sir? Is it miscarriage of justice, is that the Yes, I think that is the the proper standard, a gross miscarriage of justice where that, where a person is shown a gross miscarriage of justice and the case should be reopened. And a gross miscarriage of justice in the circumstances where there's been a legal error made by the immigration judge and importantly an improper deprivation of the right to judicial review. The Board of Immigration Appeals adopted a standard that said it would only recognize a gross miscarriage of justice where there's a clear violation of then existing judicial and administrative decisions that are not in conformity with the laws that are interpreted at the time that the immigration judge made her his or her decision. That simply is not... Could you just go back and clarify one thing and that is, are we talking now about a sui sponte reopening? Well, because there's two aspects to your appeal. That's correct, there are two different aspects. I think the board made a mistake on both aspects of them. The board denied our motion to reopen for a gross miscarriage of justice. We think that was incorrect. As an alternative, we asked for sui sponte reopening and the board simply didn't address that. So we think both of those, the decision is incorrect in both of those regards. And what do you think is the correct standard for the sui sponte reopening? So for the sui sponte reopening, the board has adopted a standard for where there are extraordinary circumstances. That's the legal standard of the standard that the board has adopted. The board didn't even address that that standard at all. We don't really know what the board was thinking. I thought the problem here was in part that the board didn't give any reason on the sui sponte. And we used to have law that said we didn't have jurisdiction to review a denial or just of non sui sponte reopening. But then a recent opinion, I think, of Judge Berzon said we could review for the limited purpose of saying whether they gave a reason or if the decision is based on a legal error, then the court would have jurisdiction to review that decision as well. That's on the sui sponte reopening. So you think you're entitled to a grant and a remand based both on the denial of the motion you made about miscarriage of justice and on the lack of proper reasoning in a sui sponte manner? Yes, that's correct. I think either one of those, the case ought to be reversed for either one of those reasons or both. The legal error in denying our motion to reopen for a gross miscarriage of justice, the board's determination there was based on its assumption that at the time that the immigration judge made her decision in May of 1996, that Mr. Molina was categorically ineligible for 212C relief at that time. That's clearly a legal error that the immigration judge made there. In light of the case, the Ninth Circuit case law, Magana case, in which the Ninth Circuit held that as a legal matter, as a legal matter, people who are in deportation proceedings before EDPO was enacted are not disqualified from 212C relief. So how would you distinguish then, sir, the Alvarengo and the Avila cases? Yes, so in Alvarengo and Avila, where the board, where the Ninth Circuit said that the cases would not have to be reopened, I think the crucial point there is that in both of those cases, the petitioners were aware of and had a right to judicial review that they consciously decided not to accept. I think in those circumstances, we can agree that there's not necessarily a gross miscarriage of justice. Where a person, where the immigration judge makes a mistake about the law and renders a decision and says, now you have a right to appeal this decision if you want to, and the person chooses not to appeal, well, maybe there's no gross miscarriage of justice there. But in this case, not only did the judge make a legal error, but Mr. Molina was improperly deprived of his right to judicial review. Wouldn't one other distinction be that in those cases, those judges could rely upon Ninth Circuit precedent interpreting EDPO and when it applied, even though that precedent was later overturned? I don't think that there was, there were a couple of board precedent decisions. I don't think there was a Ninth Circuit decision at that time, but yeah, that is right, there were a couple of board precedent decisions. Could you help me understand the procedural context? If we were to rule in your favor on the gross miscarriage of justice issue, then when we remand it, do we basically instruct that they have to permit reopening? Yes. Whereas by contrast, if we only gave relief on the lack of a reason on a sua sponte, or lack of a legal reason on a sua sponte denial, then it would just be up to the board. Okay, you send it back now, we'll give you our reasons. That's correct. If it's only done on the sua sponte, and the board hasn't given a decision, I suppose the board could look at it and come up with some decision why they didn't want to reopen sua sponte. So your client's position, you want us to rule on the gross miscarriage of justice issue? That's correct, that's correct. Did you want to reserve your remaining time? Yes, thank you. Good morning, Your Honors. May it please the Court. Edith Yukon on behalf of the Respondent. In this case, the agency properly denied the motion to reopen filed by Mr. Molina more than 16 years after he was ordered deported for the purpose of seeking relief under former Section 212C of the INA. The Supreme Court has explained that the aliens who file a motion to reopen bear a heavy burden in light of the strong public interest in bringing litigation to a close. In other words, at a certain point, a final order of removal has to be final. Consistent with that approach, aliens are generally permitted one motion to reopen to be filed within 90 days of a final administrative order. However, in 2001 and 2004, regulations were promulgated permitting certain aliens to file a motion to reopen for the purpose of seeking relief. The first regulation was in response to AEDPA and the litigation that resulted. The second set in 2004 as a result of the Sancer decision by the Supreme Court. Time and again, this Court has upheld those regulations as constitutionally sound. May I interrupt you, sir? Under the normal rules of statutory interpretation, wasn't the original IJ in 1996 just simply wrong in applying the new judicial rule that the interpretation was wrong at the time of the deportation order? That new judicial rule is not to be applied retroactively later on collateral review. But is it a new judicial rule or was the IJ just faced with which of these do I apply? What is the triggering time period? And makes the wrong legal decision. In those other cases, they did have the BIA opinion that we talked about of Enri Soriano, which was guidance and it turned out to be overturned, but they were making those decisions. Your point is well taken. There was a lot of uncertainty and in fact in this case, the timing is quite interesting because AEDPA passed and the next morning Mr. Molina appears in immigration court and is told by the immigration judge to present his application for 212C relief at the next hearing. Shortly thereafter, INS submitted a memo to the immigration judge indicating that AEDPA precluded 212C relief and the immigration judge ordered Mr. Molina deported and did provide him with an opportunity to appeal. Page 286 of the record provides that notice that was sent to Mr. Molina. That notice indicated that he had two weeks to file an appeal with the Board of Immigration Appeals. He didn't file such an appeal. Instead, he waited until the following year when he was ordered deported to reenter shortly thereafter and then another 15 or so years before he filed a motion to reopen with the agency. So in this case, Alvarenga, Villa-Lobos, Villa-Sanchez and this Court's Luna decision all support the proposition that the agency had created regulations which precluded aliens such as Mr. Molina from filing a motion to reopen because of his unlawful reentry and therefore also set a timeline for those motions which Mr. Molina did not meet. I just want to get the timing of these decisions correct in my head as well. Yes. So you're talking about Alvarenga, Villa-Lobos and that case as well as the Villa-Sanchez case. Those were after the Board's decision in Soriano but our case is before. Is that correct? In 1996, the Board issued its decision in Soriano. In 1997, the Attorney General issued a revised decision in Soriano including to the contrary that AEDPA actually did preclude eligibility for 212C relief from individuals such as Mr. Molina. In 1999, this Court issued in Magana-Pisano. I'm sorry. I hope that answers the question you were asking. So in our case, was I.J.'s decision before Soriano? Yes, because the I.J. issued a decision just days after AEDPA had passed. Right. The hearing was literally the next morning. AEDPA was signed 3 p.m. on, I believe it's the 24th. So to cut to the chase, your position is that he should have appealed that initial denial or order. Is that it? He should have appealed. He could also have argued for equitable tolling of the time limitation but doesn't do so in this case. Instead, what he argues is that the 1326 dismissal is what sets him apart from all of these other individuals who this Court has concluded are not eligible for reopening. Villa-Sanchez, Alvarenga-Villalobos, Luna. All three of those cases include individuals who became ineligible because of changes in the law in this very complex area, 212C. But Mr. Molina contends that unlike those aliens, it doesn't matter that he waited 16 years because in his case, there's a 1326 dismissal on the merits. And as the agency concluded, that's simply not the case. What the agency did properly is applied its gross miscarriage of justice standard and concluded that because under then existing law, he wasn't eligible for 212C relief, his deportation order, the initial one, was not a gross miscarriage of justice. And that's, as I mentioned, consistent with this Court's case law in Alvarenga-Villalobos and Villa-Sanchez. Counsel, could you please help me understand a practical issue? It's probably neither here nor there on the legal issues here, but I was wondering why, what happened over those 15 years or 16 years that there's an order of deportation, but he's not deported and then he seeks to reopen? He was deported in 1997 and unlawfully re-entered shortly thereafter. And so the order was executed, but he returned without permission. He came back, okay. Precisely. After he came back, then when was he found after that? Then in 2012, there was this indictment for 1326 unlawful re-entry. I believe it was a result of criminal conviction. I think I would have to refer back to the record. But I would note that Mr. Molina is actually in removal proceedings at the moment. There's a separate petition for review and opposing counsel has notified the court of this in the letter as well. And that petition is currently pending and stayed at the moment in light of a request that opposing counsel has made to the court. Great. Okay. Thank you. Would you also clarify that there's two different appeals here on the gross miscarriage of justice plus the sua sponte? Would you address the sua sponte issue? Of course. So Mr. Molina requested sua sponte reopening when he filed his appeal with the two sentences in his appeal to the board which indicate he wishes to have sua sponte reopening. He says that sua sponte is appropriate. And so the board actually addresses on page four noting that he requested sua sponte reopening stating that Mr. Molina claims that he experienced a denial of due process which is an extraordinary circumstance warranting sua sponte reopening. The board did not go on to actually state the words. There is no exceptional circumstance here. Therefore, we deny reopening sua sponte. But they did address the merits of what they saw as the claim for sua sponte reopening, this due process violation. They addressed due process in these deportation proceedings at length and addressed those on page six of the record concluding that there was no due process violation in this case. And so they in sum stated he wanted sua sponte reopening based on an alleged due process violation. There is no due process violation in this case. They didn't take that further step and state, therefore, we deny sua sponte reopening. Those words are missing from the decision. But the substance of the response to the request is there. This is how they interpreted the request. This is how they addressed it. They simply didn't take that final step. But they did, in fact. I assume you would take the position that a remand would be meaningless. Exactly. It would be futile where the board actually addressed the merits of the request. Of course, the court can remand for that purpose. But whereas here the board actually addressed the substance of the request, there would be no purpose for remanding for that reason. But as the court recognizes, if there's a remand for sua sponte reopening, then the agency would have the discretion to deny sua sponte. The immigration judge, by the way, denied this motion to reopen as a matter of discretion as well. The board didn't reach that matter. But the immigration judge concluded that in the rape of a child conviction in this case, the overwhelming facts that were negative with respect to the criminal convictions, the immigration judge thought that that was a basis for denying the motion as a matter of discretion, even if all of the other prerequisites had been met. And so, as I mentioned, the board didn't reach that. So that part of the decision is not before the court now. Simply mentioning that as a side note to the prior comment. And I see my time is up. If Your Honors have no further questions, we will submit. Thank you. Thank you. Just a couple of comments by way of response. First, on the timing of the motion to reopen, I would point out that where there is a gross miscarriage of justice, the board has allowed reopening even 16 years in a published decision, 16 years after the fact. The matter of Ferenas in a published decision involving a person who was deported by illegal error came back into the United States 16 years later. And in fact, the case was reopened and the person was granted 212C relief that he should have been eligible for back when he was improperly deported. There are, with respect to the issue of some applicants not being allowed to apply for 212C relief, and other applicants have been allowed, I think the crucial determination, the distinction there is people who have had a chance for judicial review and decided not to take that, not to accept judicial review, and people who have been precluded from judicial review. So in the Fernandez case, the unpublished case that I mentioned before in March of 2001, on all fours with Mr. Molina, this is a case, an unpublished case at page 264 in the administrative record where the Board of Immigration Appeals agreed to reopen the case and specifically said its decision was governed by the decision of the district court dismissing the Section 1326 claim, finding that because the court made the findings that he was among which include an improper deprivation of judicial review, those findings are going to be binding on the immigration judge and the case should be reopened. Thank you. Thank both counsel for your argument this morning. The case just argued is submitted.
judges: McKeown, Gould, Foote